274 F.2d 551
 DRIVERS, CHAUFFEURS AND HELPERS LOCAL UNION NO. 639, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 14347.
 United States Court of Appeals District of Columbia Circuit.
 Argued October 7, 1958.
 Decided November 26, 1958.
 Certiorari Granted April 20, 1959.
 
 See 79 S.Ct. 876.
 Mr. Herbert S. Thatcher, Washington, D. C., for petitioner. Messrs. Martin F. O'Donoghue and Thomas X. Dunn, Washington, D. C., also entered appearances for petitioner.
 Mr. Norton J. Come, Deputy Asst. General Counsel, National Labor Relations Board, with whom Messrs. Jerome D. Fenton, General Counsel, National Labor Relations Board, Thomas J. McDermott, Associate General Counsel, National Labor Relations Board, Marcel Mallet-Prevost, Asst. General Counsel, National Labor Relations Board, and Duane B. Beeson, Attorney, National Labor Relations Board, were on the brief, for appellee.
 Before WILBUR K. MILLER, BAZELON and WASHINGTON, Circuit Judges.
 BAZELON, Circuit Judge.
 
 
 1
 This appeal presents the question whether peaceful picketing to achieve recognition by members of a union which does not claim to represent a majority of the bargaining unit violates § 8(b) (1) (A) of the National Labor Relations Act, where no majority union has been certified.[1]
 
 
 2
 In 1953 the National Labor Relations Board certified the petitioner union as exclusive representative for an appropriate unit of employees of Curtis Brothers, Inc., a District of Columbia mover and retail furniture operator. After unsuccessful collective bargaining negotiations, petitioner called a strike and commenced to picket the employer's various establishments. The picketing continued for about two years during which time the employer discharged the striking help and replaced them with non-union employees. As a result of the events of these two years, the union lost decisively a new representative election conducted early in 1955 at the instance of the employer. Petitioner continued to picket the retail store, asserting in its placard, inter alia, that Curtis Brothers employed non-union "Drivers, Helpers, Warehousemen, etc." This picketing was conducted by, at most, two union members at any one time, and was admittedly peaceful in all respects. Curtis Brothers filed an unfair labor practice charge with the Board, claiming that the union's conduct violated § 8(b) (1) (A).
 
 
 3
 Relying mainly on previous Board decisions, the Trial Examiner concluded that the alleged conduct was not a violation as charged. The Board disagreed. It reasoned that the picketing was intended to impose economic injury upon the employer so long as he refused to recognize the union as bargaining agent for its employees, that any loss to the employer might reasonably jeopardize the employees' economic status, and that as a result of such threatened effect the employees might be influenced against their will to join the picketing union. The Board found that the picketing therefore restrained and coerced the employees in the exercise of their right to bargain collectively through representatives of their own choosing. It consequently held petitioner's conduct violated § 8(b) (1) (A) and ordered the union to cease and desist. This is the order we review.
 
 
 4
 The Board interpretation of § 8(b) (1) (A), and of the meaning of "coerce and restrain," presents implications of serious and far reaching consequences. But extended discussion by us would only duplicate the very complete and able expositions of the issues in the Examiner's decision, the Board's opinion, and in the opinions of the concurring and dissenting members.[2]
 
 
 5
 We adopt the positions expressed by the Trial Examiner and the Board's dissenting member Murdock in holding that § 8(b) (1) (A) is inapplicable to peaceful picketing, whether "organizational" or "recognitional" in nature, subject always to the limitations of § 8(b) (4) (C). Broadly stated, we find this conclusion necessitated by the impact which § 8(b) (1) (A) would have upon other provisions of the Act were any different interpretation adopted. For example, if § 8(b) (1) (A) were made applicable to the practice of striking or picketing itself, rather than to the violent conduct which may accompany those practices, § 13, which prohibits interference with the right to strike except as specifically provided for elsewhere in the Act, would effectively be expunged therefrom;[3] § 8 (b) (1) (A) does not specifically sanction picketing or striking. In fact, it is one of the most general provisions of the entire Act. Similarly, since § 8(b) (4) (C) expressly makes illegal picketing for recognition if a union has already been certified as bargaining representative, the Board's construction of § 8(b) (1) (A) would make the former section entirely redundant.[4]
 
 
 6
 Legislative history and post-legislative history both confirm this interpretation of § 8(b) (1) (A). Although ambiguities do exist in the legislative history of that provision, the overall impression clearly emerging is that peaceful picketing to secure recognition is not prohibited by the Act.[5] And while conduct and expressions of attitude subsequent to the enactment of legislation are not necessarily determinative of the meaning of that legislation, in this case the legislators principally responsible for § 8(b) (1) (A), and the Board itself, have, for the ten years since its enactment, adhered to the interpretation which this court now adopts.[6] Such universal acceptance of this interpretation presents a convincing confirmation of our views.
 
 
 7
 The order of the Board is therefore set aside and the case remanded for further proceedings not inconsistent with this opinion.
 
 
 8
 So ordered.
 
 
 
 Notes:
 
 
 [1]
 49 Stat. 452 (1935), as amended, 29 U.S. C.A. § 158(b) (1) (A). This section provides that:
 "(b) It shall be an unfair labor practice for a labor organization or its agents —
 "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 * * *."
 Section 7, 49 Stat. 452 (1935), as amended, 29 U.S.C.A. § 157, provides:
 "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection * * *."
 
 
 [2]
 Trial Examiner's Intermediate Report and Recommended Order, Case No. 5-CB-190 (1956); Local 639, International Brotherhood of Teamsters, AFL-CIO, 119 N.L.R.B. No. 33, Lab.Rel.Rep. (41 L.R.R.M. 1025) (1957). See also the numerous excellent discussions by legal commentators of the scope of § 8(b) (1) (A) generally, and of the import of the Board's decision in Curtis Brothers more particularly. E. g., Cox, Labor Law 299-304, 872-76 (3d ed. 1954); Cox, Some Current Problems in Labor Law: An Appraisal, 35 L.R.R.M. 48 (1955); Bornstein, Organizational Picketing in American Law, 46 Ky.L.J. 25, 57-61 (1957); Note, 42 Minn.L.Rev. 459 (1958); Note, 44 Va.L.Rev. 741 (1958); Note, 67 Yale L.J. 1462 (1958)
 
 
 [3]
 49 Stat. 457 (1935), as amended, 29 U.S.C.A. § 163, provides:
 "Nothing in this subchapter, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right."
 See N. L. R. B. v. International Rice Milling Co., 1951, 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1277, for a discussion of § 13.
 The use of "strike" in § 13 has been construed to apply to picketing as well. See Sales Drivers, etc., A. F. L. v. N. L. R. B., 97 U.S.App.D.C. 173, 229 F.2d 514, certiorari denied 1955, 351 U.S. 972, 76 S.Ct. 1025, 100 L.Ed. 1490; International Brotherhood of Teamsters, 87 N.L.R.B. 502, 507-08 (1949).
 
 
 [4]
 49 Stat. 452 (1935), as amended, 29 U.S. C.A. § 158(b) (4) (C):
 "(b) It shall be an unfair labor practice for a labor organization or its agents to —
 * * * * *
 "(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: * * * (C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title."
 
 
 [5]
 Board member Murdock convincingly discusses the legislative history of the Act, see note 2 supra. For similar interpretation by the Board itself, see National Maritime Union, 78 N.L.R.B. 971 (1948)
 
 
 [6]
 See sources cited at note 2, supra
 
 
 
 9
 WILBUR K. MILLER, Circuit Judge (dissenting).
 
 
 10
 Although rejected by the Curtis employees by a vote of 28 to one, the union thereafter continued to picket the company. The Board held that, under these circumstances, the picketing constituted a violation of § 8(b) (1) (A) of the Taft-Hartley Act[1] in that it restrained or coerced employees in the exercise of guaranteed rights, saying inter alia:
 
 
 11
 "* * * There can be no more direct deprivation of the employees' freedom of choice than to impose upon them a collective bargaining agent they have not chosen or have expressly rejected. * * *"
 
 
 12
 There can be no doubt that the purpose of the Teamsters' picketing was either to compel Curtis employees to join the union in order to keep on working, or to put pressure on the employer to grant recognition to the very union its employees had just rejected.[2]
 
 
 13
 Section 8(b) (1) of the Labor Act makes it an unfair labor practice for a union "to restrain or coerce (A) employees in the exercise of the rights guaranteed" in § 7.[3] The latter section guarantees to employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and * * * to refrain from any or all of such activities * * *."
 
 
 14
 When these two sections of the statute are read together, it becomes clear that it is immaterial whether the union restrains or coerces the employees directly or through the medium of the employer. For using the employer as an economic club does not protect the union from a charge of illegal coercion if such coercion in fact results. Thus, both of the only two possible purposes of the picketing are illegal. The purposes of it being unlawful under the plain language of the Act, the picketing itself is, of course, illegal.
 
 
 15
 In effect, the majority hold it lawful for the Hoffa labor organization, after it had been repudiated almost unanimously by the employees, to put a picket line around the place of business in an effort to force the employer to tell the employees to join the union or be discharged — i. e., in an attempt to force the employees into the union they had just emphatically rejected. Such an interpretation of the Act, which I think is clearly wrong, is an invitation to labor racketeers and hoodlums to use its processes for unlawful purposes.
 
 
 
 Notes:
 
 
 [1]
 61 Stat. 140 (1947), 29 U.S.C.A. § 158 (b) (1) (A)
 
 
 [2]
 After the union lost the election, the pickets carried signs reading: "Teamsters Union No. 639 AFL wants employees of Curtis Bros. to join them to gain union wages, hours and working conditions."
 
 
 [3]
 61 Stat. 140 (1947), 29 U.S.C.A. § 157